J-S47015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ANDREW HIBBS | : | |
| | : | |
| Appellant | : | No. 2207 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 9, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0000515-2025

BEFORE:  PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED FEBRUARY 27, 2026**

Jason Andrew Hibbs appeals from the judgment of sentence imposed on July 9, 2025, for his convictions of harassment.[1] Hibbs challenges the sufficiency of the evidence supporting his conviction of harassment under subsection 2709(a)(4). After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

> The incident underlying [Hibbs'] convictions occurred in December of 2024 in Levittown, Bucks County, Pennsylvania. On December 15, 2024, [Hibbs'] maternal grandmother passed away. On December 17, 2024, [Hibbs] called his mother, Jane Colwell (hereinafter "Victim"), to demand that Victim give him his grandmother's parakeets. When Victim declined to let [Hibbs] take the animals at that time, [Hibbs] became angry and threat[en]ed to kill Victim, her husband, her son ([Hibbs'] brother), and her granddaughter ([Hibbs'] niece) and threat[en]ed to burn both Victim's house and his grandmother's house down. Victim testified that she and [Hibbs] have had a

_____

[1] 18 Pa.C.S.A. §§ 2709(a)(1) and (a)(4).

contentious relationship throughout the entirety of his life, but that they had not spoken at all over the year prior to the call. Victim further testified that she was fearful after the phone call as [Hibbs] is unpredictable and that she immediately reported the incident to the Falls Township Police Department. Officer Brian Fisher responded to the scene and charges for harassment were filed.

On July 9, 2025, after a bench trial before [the trial court, Hibbs] was found guilty of two counts of harassment. That same day, [the trial court] sentenced [Hibbs] to twelve months of probation to be supervised by the Bucks County Adult Probation Department. After six months, if [Hibbs] had incurred no violations and paid his court costs, [the trial court] ordered that the probation could become non-reporting. [Hibbs filed a post-sentence motion seeking to modify his sentence. The trial court denied this motion on July 21, 2025.] On August 20, 2025, [Hibbs] filed [a] notice of appeal to [this Court].

Trial Court Opinion, 10/9/25, at 1-2 (unnecessary capitalization, record citations, and footnote omitted).

The trial court ordered Hibbs to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he complied. **See** Pa.R.A.P. 1925(b). The trial court authored its opinion on October 9, 2025. **See** Pa.R.A.P. 1925(a).

Hibbs raises one issue for our review:

Was the evidence insufficient as a matter of law to support Mr. Hibbs's conviction for harassment where isolated comments in response to an intense emotional situation cannot establish beyond a reasonable doubt that Mr. Hibbs had the intent to harass, annoy, or alarm?

Appellant's Brief, at 4.

Hibbs argues the evidence was insufficient because it was an isolated incident with only a single threat made after Hibbs found out his grandmother

- 2 -

passed away and he was not told about her passing. ***See id.*** at 10-12. He asserts this Court's decision in ***Commonwealth v. Miyares***, 320 A.3d 740 (Pa. Super. 2024), supports his belief that a course of conduct is required to support a harassment conviction under subsection 2709(a)(4). ***See id.*** at 9-11. We disagree.

We review a sufficiency challenge as follows:

[W]e must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. When performing this review, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.

***Miyares***, 320 A.3d at 743 (citation omitted).

The ***Miyares*** Court explained:

"A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person: … (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S.A. § 2709(a)(4). An intent to harass may be inferred from the totality of the circumstances.

Furthermore, the harassment statute defines the term "communicates" as "convey[ing] a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, internet, facsimile, telex, wireless communication or similar transmission." 18 Pa.C.S.A. § 2709(f).

This Court has further recognized that a harassment conviction is arguably not predicated on the speech itself but rather the conduct accompanying the speech. The statute is not directed at the content of speech and is unrelated to the suppression of free expression. Rather, the statute focuses on the manner and means of communication and proscribes communications made with an intent to harass. Under the harassment statute, communications

are considered threatening if they do not fall within an identified exception to the First Amendment and constitute "fighting words" or "true threats." … Furthermore, speech which communicates a serious expression of intent to commit an act of unlawful violence against a particular individual or group of individuals—more commonly referred to as a true threat—is another certain class of speech that is beyond the protective ambit of the First Amendment. The hallmark of a true threat is that it threatens unlawful violence.

*Id.* at 743-44 (footnote and some citations and quotation marks omitted).

In *Miyares*, this Court found sufficient evidence for a conviction under subsection 2709(a)(4) where the defendant raised his middle finger and called the victim "gay bitch." *Id.* at 744. This Court agreed with the trial court that those were "fighting words likely to provoke a violent reaction." *Id.* This Court further agreed with the trial court that there was a continuing course of conduct of harassment against the victim as there were nine incidents over a three-week span. *See id.*

Hibbs' reliance on *Miyares* is misplaced because this case is factually distinguishable. There, this Court considered fighting words and a continuing course of conduct. Here, we have a threat made on a single phone call. We therefore look to whether this was a true threat sufficient to convict Hibbs of harassment.

Our Pennsylvania Supreme Court outlined what should be considered when making this determination:

In determining whether particular speech constitutes a true threat, consideration of both the speaker's scienter and the contextual circumstances is required. Relevant contextual factors include whether the threat was conditional, whether it was

- 4 -

communicated directly to the victim, whether the victim had reason to believe the speaker had a propensity to engage in violence, and how listeners reached to the speech.

*Interest of: J.J.M.*, 265 A.3d 246, 273 (Pa. 2021) (ellipsis, quotation marks, and citation omitted).

Here, Hibbs called his grandmother's house, unaware that she had passed away. *See* N.T. Trial, 7/9/25, at 10-11. The Victim answered the phone, as she was there cleaning up. *See id.* The Victim informed Hibbs of his grandmother's passing, and Hibbs asked if he could take the parakeets. *See id.* The Victim told Hibbs that he could not take the parakeets at that time, and Hibbs became "[v]ery mean, very upset[.]" *Id.* at 11. Hibbs threatened to burn both the Victim's and his grandmother's house, and threatened to kill the Victim, her husband, her other son, and her granddaughter. *See id.* at 10.

The contextual circumstances here indicate the threat was not conditional, it was communicated directly to one of the victims, and the Victim was fearful of Hibbs. The Victim explained that Hibbs had unexpected behavioral issues and she was afraid of what he might do following the threat. *See id.* at 11. We find this evidence sufficient. The threats made here qualify as true threats. No course of conduct is required for a conviction under subsection 2709(a)(4). Hibbs communicated a true threat to the Victim and there was sufficient evidence to find he did so with the intent to alarm her. *See* 18 Pa.C.S.A. § 2709(a)(4). We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2026